UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DILLON BOILER SERVICES, CO. INC., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> SOUNDVIEW VERMONT HOLDINGS, ) <br> LLC, ) <br> ) <br> Defendant. ) | CIVIL ACTION <br><br> NO. 4:19-40036-TSH |

## ORDER AND MEMORANDUM ON DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION (Docket No. 7)

**July 29, 2019**

**HILLMAN, D.J.**

Plaintiff, Dillon Boiler Services, Co. Inc. ("Dillon"), attempts to hale the Defendant, Soundview Vermont Holdings, LLC ("Soundview"), a Vermont corporation, into this Court to litigate their contractual dispute arising out of work Dillon performed in Vermont for one of Soundview's subsidiaries. Soundview moves to dismiss pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. (Docket No. 7). Because the Court finds that asserting jurisdiction would be inconsistent with the Due Process Clause, Soundview's motion is ***granted***.

### Background

Dillon is a Massachusetts corporation that fabricates and repairs boilers and pressure vessels. In August 2012, APC Paper Company ("APC") called Dillon's president, John McNamara, to request that Dillon submit a proposal to covert two boilers at Putney Paper Company ("Putney Paper")—a wholly owned subsidiary of APC—from oil fuel to natural gas.

On August 24, Dillon submitted its proposal and the parties subsequently engaged in several discussions by telephone, email, and fax to further negotiate the terms of a contract.

On December 6, 2012, Putney Paper prepared a purchase order for Dillon to convert the boilers, which was sent to Dillon on January 3, 2013. After Putney Paper prepared the purchase order, but before it was sent to Dillon, Soundview acquired Putney Paper from APC.

In February 2013, Dillon converted the boilers but the relationship between the parties soured due to disputes regarding warranties and the amounts charged by Dillon for the work. To date, Soundview has not paid Dillon for its work.

## Standard of Review

When considering a Rule 12(b)(2) motion without an evidentiary hearing, a district court uses the prima facie standard to evaluate whether it has personal jurisdiction over the defendant. Under this standard, "the inquiry is whether the plaintiff has proffered evidence which, if credited, is sufficient to support findings of all facts essential to personal jurisdiction." *Phillips v. Prairie Eye Ctr.*, 530 F.3d 22, 26 (1st Cir. 2008). The plaintiff bears the burden of showing that the court may exercise personal jurisdiction over the defendant and "must put forward evidence of specific facts to demonstrate that jurisdiction exists." *A Corp. v. All Am. Plumbing*, 812 F.3d 54, 58 (1st Cir. 2016) (internal quotation marks and citation omitted). Further, courts "take the plaintiff's evidentiary proffers as true and construe them in the light most favorable to the plaintiff's claim." *C.W. Downer & Co. v. Bioriginal Food & Sci. Cor.*, 771 F.3d 59, 65 (1st Cir. 2014). Finally, courts also "consider uncontradicted facts proffered by the defendant." *Id.*

## Discussion

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction is the functional equivalent of a state court sitting in the

forum state." *Sawtelle v. Farrell*, 70 F.3d 1381, 1387 (1st Cir. 1995). Thus, in order to establish personal jurisdiction over Soundview, Dillon must satisfy the requirements of both the Massachusetts long-arm statute and the Due Process Clause of the Fourteenth Amendment. *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 290 (1980).

"[C]ourts should consider the long-arm statute first, before approaching the constitutional question." *SCVNGR, Inc. v. Punchh, Inc.*, 478 Mass. 324, 330 (2017). Determining first whether the long-arm statute's requirements are met is consistent with the duty to avoid "decid[ing] questions of a constitutional nature unless absolutely necessary to a decision of the case." *Burton v. United States*, 196 U.S. 283, 295 (1905).

### 1. Massachusetts Long-Arm Statute

The First Circuit "has sometimes treated the limits of Massachusetts's long-arm statute as coextensive with those of the Due Process Clause." *Copia Commc'ns, LLC v. AMResorts, L.P.*, 812 F.3d 1, 4 (1st Cir. 2016) (citing *Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A.*, 290 F.3d 42, 52 (1st Cir. 2002)). Recently, however, it has "suggested that Massachusetts's long-arm statute might impose more restrictive limits on the exercise of personal jurisdiction than does the Constitution." *Id.* (citing *Cossart v. United Excel Corp.*, 804 F.3d 13, 20 (2015)).

Because Soundview does not proffer any arguments why its contacts with the Commonwealth do not satisfy the state's long-arm statute, the Court need not address this potential tension in First Circuit precedent and will proceed directly to the constitutional inquiry. *See id.*; *Get In Shape Franchise, Inc. v. TFL Fishers, LLC*, 167 F. Supp. 3d 173, 191 (D. Mass. 2016) ("[W]here the parties do not challenge the application of Massachusetts's long-arm statue, courts consider 'any argument that the long-arm statute does not reach as far as the Fifth Amendment

allows' waived, and 'proceed directly to the constitutional inquiry.'" (quoting *Copia*, 812 F.3d at 4)).

## 2. Constitutional Due Process

"The exercise of personal jurisdiction may, consistent with due process, be either 'specific or case-linked' or 'general or all-purpose.'" *Cossart*, 804 F.3d at 20 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Because Dillon waives any argument that Massachusetts may exercise general jurisdiction over Soundview, Dillon must demonstrate that Soundview's contacts with the Commonwealth are sufficient for the Court to assert specific jurisdiction.

The inquiry into whether the defendant has the requisite "minimum contacts" necessary to assert specific personal jurisdiction is inherently imprecise: "the criteria which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative." *International Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945). To assist in this necessarily individualized assessment, the First Circuit has held that a plaintiff seeking to establish specific jurisdiction must demonstrate that three conditions are satisfied:

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's laws and making the defendant's involuntary presence before the state's courts foreseeable. Third, the exercise of jurisdiction must . . . be reasonable.

*Phillips*, 530 F.3d at 27 (quoting *Adelson v. Hananel*, 510 F.3d 43, 49 (1st Cir. 2007)).

### a. Purposeful Availment

Because the purposeful availment inquiry is dispositive, the Court will proceed there directly. "In determining whether the purposeful availment condition is satisfied, our 'key focal

points' are the voluntariness of the defendants' relevant Massachusetts contacts and the foreseeability of the defendants falling subject to Massachusetts's jurisdiction." *Copia*, 812 F.3d at 5 (quoting *Adelson v. Hananel*, 510 F.3d 43, 50 (1st Cir. 2007)). Voluntariness requires that the defendant's contacts with the forum state are "not based on the unilateral actions of another party or a third person." *Nowak v. Tak How Investments, Ltd.*, 94 F.3d 708, 716 (1st Cir. 1996). Foreseeability requires that "the defendant's contacts with the forum state be such that he should reasonably anticipate being haled into court there." *Id.*

The First Circuit has noted that whether a defendant has purposefully availed itself of the forum where remote communications establish the predicate for the minimum contacts turns on three factors: "the defendant's in-forum solicitation of the plaintiff's services, the defendant's anticipation of the plaintiff's in-forum services, and the plaintiff's actual performance of extensive in-forum services." *Copia Communications*, 812 F.3d at 6 (describing the factors from *C.W. Downer* and *Cossart*).

Here, Dillon cannot satisfy his burden of demonstrating that Soundview purposefully availed itself of the privilege of conducting business in the Commonwealth. First, Soundview did not communicate with Dillon, Putney Paper (which was then owned by APC) did. Dillon contends that, because Soundview acquired Putney Paper, any of Putney Paper's negotiations with Dillon should be imputed to Soundview.

Courts generally "respect the legal independence of a corporation and its subsidiary when determining if a court's jurisdiction over the offspring begets jurisdiction over the parent." *United Elec., Radio & Mach. Workers of Am. V. 163 Pleasant Street Corp.*, 960 F.2d 1080, 1091 (1st Cir. 1992); *see also Escude Cruz v. Ortho Pharma Corp.*, 619 F.2d 902, 905 (1st Cir. 1980) ("The mere fact that a subsidiary company does business within a state does not confer jurisdiction over its

5

nonresident parent, even if the parent is sole owner of the subsidiary."). It is true, however, that the "presumption of corporate separateness [may] be overcome by clear evidence that the parent in fact controls the activities of the subsidiary." *Escude*, 619 F.2d at 905. Here, nothing in the record indicates, nor does Dillon argue, that Soundview controlled Putney Paper's negotiations. In fact, it seems that all of the negotiations occurred before Soundview acquired Putney Paper since the draft agreement predated the acquisition. Consequently, the record does not warrant imputing Putney Paper's negotiations in the Commonwealth to Soundview and disregarding their corporate independence.

Even if those negotiations were attributable to Soundview, however, Dillon cannot satisfy the remaining two *Copia* factors necessary to confer jurisdiction. Soundview never anticipated, nor did Dillon perform, any services in the Commonwealth. Instead, all of Dillon's work occurred at Putney Paper's plant in Vermont. *Cf. C.W. Downer*, 771 F.3d at 67 (holding foreign corporation subject to specific jurisdiction where the defendant contracted with a Massachusetts investment bank and "actively caused [the plaintiff] to undertake extensive activities on [the defendant's] behalf *within Massachusetts*" (emphasis added)); *Cossart*, 804 F.3d at 21 (finding sufficient contacts to assert specific jurisdiction where "United Excel recruited Cossart at his home in Massachusetts. The resulting employment contract, as negotiated by Hornbaker, contemplated that Cossart would continue to work *from Massachusetts* on United Excel's behalf and that the company would facilitate that work by providing the requisite office equipment" (emphasis added)). Therefore, Dillon cannot satisfy any of the three *Copia* factors. As a result, Dillon has not met its burden of showing that Soundview purposefully availed itself of conducting business in the Commonwealth.

## **Conclusion**

For the reasons stated above, Soundview's motion to dismiss (Docket No. 7) is **_granted_**.

**SO ORDERED**

**_/s/ Timothy S. Hillman_**
**TIMOTHY S. HILLMAN**
**DISTRICT JUDGE**